IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA

SHAMYRA TALLEY, )
)
    Plaintiff, )
)
vs. ) No. CIV-16-451-W
)
BRINKER OKLAHOMA, INC., also )
known as CHILI'S OKLAHOMA, INC., )
BRINKER INTERNATIONAL PAYROLL )
COMPANY, L.P., doing business as )
CHILI'S GRILL & BAR and CHILI'S )
HAMBURGER GRILL AND BAR, INC., )
and BRINKER INTERNATIONAL, INC., )
)
    Defendants. )

## ORDER

Plaintiff Shamyra Talley brought this action on May 2, 2016, seeking relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq. Talley named as defendants Brinker Oklahoma, Inc., also known as Chili's Oklahoma, Inc., Brinker International Payroll Company, L.P., doing business as Chili's Grill & Bar and Chili's Hamburger Grill and Bar, Inc. ("Brinker Payroll"), and Brinker International, Inc., which operate several restaurants in the State of Oklahoma. Talley alleged in her complaint that during her employment as a server at one particular restaurant, she was subjected to a hostile work environment because of her gender and retaliation because she protested the harassment, offensive comments and sexual assaults and advances.

Talley was first hired by the defendants in January 2006, and she remains employed by the defendants at a restaurant other than the one at which the alleged discriminatory

and retaliatory conduct occurred.[1] Each time Talley applied for employment, she completed certain paperwork. Applications dated January 10, 2006,[2] December 9, 2006, and June 19, 2008, see Doc. 5-1 at 7, 9, 11, required Talley to read and sign the accompanying Agreement to Arbitrate, and each advised that execution of the Agreement to Arbitrate was a condition of employment. See id. at 8, 10, 14.

On June 4, 2014, Talley again applied for employment with the defendants. See Doc. 1 at 4, ¶ 10. An Agreement to Arbitrate dated that same day reflects Talley's electronic signature, see Doc. 5-1 at 17, and provides in pertinent part that if an employee is

> unable to resolve any . . . complaints or disputes [relating to her employment] to . . . [the employee's] satisfaction internally, [the defendants] . . . ha[ve] provided for the resolution of all disputes that arise between [the employee] . . . and [the defendants] . . . through formal, mandatory arbitration before a neutral arbitrator.

Id. at 16. The employee's electronic signature on that document "affirm[s] that . . . [the employee] ha[s] read the . . . Agreement to Arbitrate and agree[s] to resolve all [employment-related] disputes . . . through formal, mandatory arbitration . . . ." Id. at 17.

The defendants distribute or make available to their employees a document, which since 2010 has been known as the "Hourly Team Member Policies and Procedures Manual ('Manual')." See id. at 26. An employee indicates receipt of the Manual through his or her signature, which is an acknowledgement that the employee not only has "read,

---

[1] See Declaration of Chris Gravens (July 13, 2016) at 3, ¶ 4. Talley has advised that she is now on maternity leave. See Affidavit and Declaration of Shamyra T. Talley (August 2, 2016) at 4, ¶ 25.

[2] Although Talley does "not recall reviewing and signing the Arbitration Agreement dated January 10, 2006, . . . [she concedes that] the signature [on the document] . . . appears to be [her] . . . handwriting." Id. at 2, ¶ 6.

2

understand[s] and [is] . . . in compliance with each policy[ ] [set forth] in the Manual[, including that section pertaining to the Agreement to Arbitrate,] . . .[but also understands that such compliance] is a condition of . . . employment with [the defendants] . . . ." Id. A paper titled "Receipt of Brinker's Hourly Team Member Policies & Procedures Manual" and dated June 4, 2014, bears Talley's electronic signature. See id.

The matter now comes before the Court on the defendants' Motion to Dismiss and Compel Arbitration filed pursuant to the Federal Arbitration Act ("Act"), 9 U.S.C. § 1 et seq. Talley has responded, and the defendants have filed a reply.

Section 2 of the Act, which has been described by the United States Supreme Court as "the 'primary substantive provision of the Act,'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)(quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corporation, 460 U.S. 1, 24 (1983)), and "as reflecting both a 'liberal federal policy favoring arbitration,'" id. (quoting Moses H. Cone, 460 U.S. at 24), "and the 'fundamental principle that arbitration is a matter of contract,'" id. (quoting Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010)), provides in relevant part that

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract[ ] [or] transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Sections 3 and 4 of the Act "establish[ ] [the] procedures by which federal courts implement [section] 2's substantive rule." Rent-A-Center, 561 U.S. at 68. Under section 3,

> [i]f any suit . . . be brought in any of the courts of the United States upon an issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit . . . is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.

Section 4 further provides that

> [a] party aggrieved by the alleged failure . . . or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . in any civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .

Id. § 4.

Before "the [C]ourt shall make an order directing the parties to proceed to arbitration," id., the Court must find that a valid written agreement to arbitrate exists between the parties and that the parties are therefore "bound by a contractual duty to arbitrate . . . ." ARW Exploration Corporation v. Aguirre, 45 F.3d 1455, 1460 (10th Cir. 1995); e.g., Avedon Engineering, Inc. v. Seatex, 126 F.3d 1279, 1283 (10th Cir. 1997).

The crucial document in the instant case is the Agreement to Arbitrate dated June 4, 2014. See Doc. 5-1 at 16-17. There can be no dispute that this document, if executed by Talley, clearly constitutes "an agreement in writing to submit to arbitration an[y] existing controversy arising out[,]" 9 U.S.C. § 2, Talley's employment with the defendants, and Talley has not argued otherwise.

The issue rather is whether Talley executed the arbitration agreement.³ Talley has not denied that she did so; rather, she has stated only that she "do[es] not recall reviewing and/or signing the . . . [A]greement [to Arbitrate] dated June 4, 2014[.]" Affidavit and Declaration of Shamyra T. Talley (August 2, 2016) at 2, ¶ 12 (hereafter "Talley Affidavit").

Under Rule 406, F.R.E., "[e]vidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with th[at] . . . practice. . . . [T]his evidence [is admissible] regardless of whether it is corroborated . . . ."

As the Tenth Circuit has held, the Court may accept such evidence at this stage of the litigation and may draw the inference therefrom that this routine practice was implemented in this instance. E.g., Hancock v. American Telephone & Telegraph Co., 701 F.3d 1248, 1261-63 (10th Cir. 2012); Morris v. Travelers Indemnity Co. of America, 518 F.3d 755, 761 (10th Cir. 2008)(affidavit from agent that it was his usual practice to explain various coverage options constitutes relevant evidence that his conduct on the relevant occasion was in conformity with that routine practice); Federal Kemper Life Assurance Co. v. Ellis, 28 F.3d 1033, 1040 (10th Cir. 1994)(testimony regarding organization's "standard operating procedure" admissible to show adherence to procedure on particular occasion).

---

³"'When parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted unless there are no genuine issues of material fact regarding the parties' agreement.'" Hardin v. First Cash Financial Services, Inc., 465 F.3d 470, 475 (10th Cir. 2006)(quoting Avedon Engineering, Inc. v. Seatex, 126 F.3d 1279, 1283 (10th Cir. 1997)). "'When . . . no material disputes of fact exist it [is] . . . permissible and efficient for [the] . . . [C]ourt to decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration.'" Howard v. Ferrellgas Partners, L.P., 748 F.3d 975, 978 (10th Cir. 2014)(citing Hancock v. American Telephone & Telegraph Co., 701 F.3d 1248, 1261 (10th Cir. 2012)).

5

See Rule 406, supra, Advisory Committee Notes (generally agreed "that habit evidence is highly persuasive as proof of conduct on a particular occasion.").

In response to Talley's assertions, the defendants have submitted the sworn statement of Brandon Loeffler, Brinker Payroll's Talent Systems Analyst. See Declaration of Brandon Loeffler (August 9, 2016). Loeffler has explained the defendants' hiring process, which includes completion by new hires of "onboarding" paperwork and execution and submission by these individuals of "electronic signature agreements"[4] and agreements to arbitrate. Because Talley has not disputed the defendants' standard-practice evidence, the Court finds even giving Talley "the benefit of all reasonable doubts and inferences that may arise[,]'" Hancock, 701 F.3d at 1261 (quotation and further citation omitted), from the evidence, as the Court is required to do, that the defendants have shown that an agreement to arbitrate exists between the parties.

Accordingly, the Court must next inquire, e.g., Cummings v. FedEx Ground Package System, Inc., 404 F.3d 1258, 1261 (10th Cir. 2005), whether Talley's dispute with the defendants falls within the scope of that arbitration agreement. E.g., Granite Rock Co. v. International Brotherhood of Teamsters, 561 U.S. 287, 2856 (2010)(court may order arbitration of particular dispute only where court is satisfied that "parties agreed to arbitrate that dispute")(emphasis deleted). Talley has advanced no strong objection to the applicability or enforceability of arbitration clauses in lawsuits involving Title VII claims, such as the case-at-bar. Indeed, it is well-established "that federal statutory claims can be

---

[4]E.g., 15 U.S.C. § 7001(a)("signature . . . may not be denied legal effect, validity, or enforceability solely because it is in electronic form"); 12A O.S. § 15-107(a)("signature may not be denied legal effect or enforceability solely because it is in electronic form").

6

appropriately resolved through arbitration," Green Tree Financial Corp.–Alabama v. Randolph, 531 U.S. 79, 89 (2000), and that Title VII claims in particular may be subject to mandatory arbitration. E.g., Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1487 (10th Cir. 1994).

Finally, the Court has considered Talley's remaining challenge: she "cannot effectively vindicate her statutory rights under Title VII . . . ," Doc. 14 at 2, because she cannot afford the costs of arbitration or the costs of legal representation. See Talley Affidavit at 4, ¶¶ 24-28. As stated, Section 2 permits agreements to arbitrate "to be declared unenforceable upon such grounds as exist at law or in equity for the revocation of any contract.'" AT&T Mobility, 563 U.S. at 339. Agreements may therefore "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,'" id., or, as Talley has invoked in this case, the judge-made exception to the Act which permits the Court "to invalidate, on 'public policy' grounds, arbitration agreements that 'operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies.'" American Express Co. v. Italian Colors Restaurant, 133 S. Ct. 2304, 2310 (2013)(quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 n.19 (1985))(emphasis deleted); e.g., Nesbitt v. FCNH, Inc., 811 F.3d 371 (10th Cir. 2016).

The Tenth Circuit has held that while an arbitral forum is presumptively adequate to resolve federal statutory claims, this presumption falters "if the terms of [the] . . . arbitration agreement actually prevent [the employee] . . . from effectively vindicating . . . her statutory rights." Shankle v. B-G Maintenance Management of Colorado, Inc., 163 F.3d 1230, 1234 (10th Cir. 1999)(citations omitted). Because "an arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also

provide for an effective and accessible alternative forum[,]" id. (footnote omitted), this "effective vindication" exception has been applied to deny enforcement of an arbitration agreement that required a plaintiff seeking relief against an employer under federal anti-discrimination laws to pay certain arbitration costs. E.g., id.

In Shankle, each party had to pay one-half of the arbitrator's fees–an amount estimated to be "between $1,875 to $5,000[.]" Id. Because the employee could not afford this expense, the circuit found that the employer through imposition of this "prohibitive cost[,]" id. at 1235, had "failed to provide an accessible forum in which [its employee] . . . could resolve his statutory rights[,]" id.–"a result [that] clearly undermine[d] the remedial and deterrent functions of the federal anti-discrimination laws." Id. (citations omitted).

The Agreement to Arbitrate dated June 4, 2014, is silent regarding payment of arbitrator fees and administrative expenses. The defendants have not challenged Talley's assertion that she cannot afford to pay these fees and expenses, if she is required to do so; they have in fact "agree[d] to pay in full the arbitrator's fees, as well as the arbitrator's administrative expenses and travel costs, if any."[5] Declaration of Chris Gravens (July 13, 2016) at 5, ¶ 13. Thus, assuming the defendants' offer pertains to the upfront payment of all arbitration costs and fees, and not reimbursement after Talley's payment of the same,

---

[5] In Green Tree Financial Corp.–Alabama v. Randolph, 531 U.S. 79 (2000), the employee argued that the arbitration agreement was unenforceable because it was silent as to which party would bear the cost of the arbitrator and "thus fail[ed] to provide her protection from potentially substantial costs of pursuing her federal statutory claims in the arbitral form." Id. at 89. The United States Supreme Court found that silence "alone [was] . . . plainly insufficient to render . . . [the arbitration agreement] unenforceable. The 'risk' that [the employee would] . . . be saddled with prohibitive costs [was in that case] . . . too speculative to justify the invalidation of [the] . . . agreement." Id. at 91. The Supreme Court imposed on the "party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . the burden of showing the likelihood of incurring such costs." Id. at 92.

the Court finds the concern expressed in Shankle that arbitration agreements that require employees to pay arbitration costs effectively preclude pursuit of statutory claims is arguably not present in this case.[6]

Talley has also argued that the Agreement to Arbitrate should not be enforced due to its fee-shifting language. While Talley "is entitled to representation by an attorney throughout the arbitration proceedings," Doc. 5-1 at 16, the instant arbitration agreement mandates that such representation is "at [her] . . . own expense[,]" id., and that she must "bear . . . [her] own [legal] fees and expenses[.]" Id. In response, the defendants have focused on the qualifying phrase to that requirement: "unless otherwise awarded by the arbitrator." Id.

Title VII authorizes the Court to "allow the prevailing party . . . a reasonable attorney's fee . . . ." 42 U.S.C. § 2000e-5(k). "[W]hen a plaintiff [has] secure[d] an 'enforceable judgment[ ] on the merits . . . ,'" CRST Van Expedited, Inc. v. Equal Employment Opportunity Commission, 136 S. Ct. 1642, 1646 (2016)(quotation omitted), "that plaintiff is the prevailing party[,]" id., for purposes of Title VII. "When a defendant is the prevailing party on a civil rights claim, . . . [a] district court[ ] may [exercise its discretion and] award attorney's fees if the plaintiff's 'claim was frivolous, unreasonable, or groundless,' or if 'the plaintiff continued to litigate after it clearly became so.'" Id. (quotation and further citation omitted).

---

[6]In Nesbitt v. FCNH, Inc., 811 F.3d 371 (10th Cir. 2016), the Tenth Circuit rejected the defendants' argument that the absence of any language in the arbitration agreement regarding the allocation of arbitration fees and arbitrator costs "'eliminated the potential for burdensome fees[,]'" id. at 379 (citation omitted), since the agreement invoked the American Arbitration Association's Commercial Rules, which expressly addressed the issue of fees and costs.

Under the instant Agreement to Arbitrate, Talley runs the risk that even if she prevails before the arbitrator she will "bear . . . [her] own [legal] fees and expenses[.]" Doc. 5-1 at 16. This is so despite the fact the agreement does not require Talley to "surrender . . . any substantive statutory . . . benefits[ ] [or] protection[,]" id., a provision which appears to conflict with the document's language governing legal fees and costs.

Because Talley has sufficiently shown that she could likely face prohibitive legal fees and expenses if arbitration is compelled and that she is financially incapable of paying the same, the Court finds that the Agreement to Arbitrate prevents Talley from effectively vindicating her rights under Title VII. Accordingly, the Court DENIES the defendants' Motion to Dismiss and Compel Arbitration [Doc. 5] filed on July 13, 2016.

ENTERED this 22nd day of August, 2016.

LEE R. WEST
UNITED STATES DISTRICT JUDGE